# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

TERENCE A. KIRO,

       **Plaintiff,**

    vs.                                     **Civ. No. 18-89  SCY**

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

       **Defendant.**

## MEMORANDUM OPINION AND ORDER[1]

      **THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 12) filed April 18, 2018, in support of Plaintiff Terence A. Kiro's ("Plaintiff") Complaint (Doc. 1) seeking review of the decision of Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") denying his claim for Title II disability insurance benefits.  On June 20, 2018, Plaintiff filed his Motion to Reverse and Remand for Rehearing With Supporting Memorandum ("Motion").  Doc. 16.  The Commissioner filed a Response in opposition on August 20, 2018 (Doc. 18), and Plaintiff filed a Reply on September 4, 2018 (Doc. 19).  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).  Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is not well taken and is **DENIED.**

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case.  (Docs. 4, 7, 8.)

# I. Background and Procedural Record

Claimant Terence A. Kiro ("Mr. Kiro") alleges that he became disabled on September 29, 2006,[2] at the age of forty-five because of sciatica, right hip pain, degenerative disc disease (lumbar), open reduction internal fixation (ORIF) lumbar, and memory loss.  Tr. 42, 211, 214.[3] Mr. Kiro completed the twelfth grade in 1979 and has worked as a journeyman/painter for small business contractors and painting companies.  Tr. 215, 243-54.

On September 29, 2014, Mr. Kiro filed an application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*.  Tr. 189-90.  Mr. Kiro's application was initially denied on May 12, 2015.  Tr. 73-80, 81, 91-94.  It was denied again at reconsideration on September 15, 2015.  Tr. 82-89, 90, 100-04. Mr. Kiro requested a hearing before an Administrative Law Judge ("ALJ"), and ALJ Raul C. Pardo conducted a hearing on July 11, 2017.  Tr. 39-71.  Mr. Kiro appeared in person at the hearing with attorney representative William S. Rode.  *Id*.  The ALJ took testimony from Mr. Kiro and an impartial vocational expert ("VE"), Cornelius Ford.  *Id*.  On August 14, 2017, ALJ Pardo issued an unfavorable decision.  Tr. 19-33.

On December 3, 2017, the Appeals Council issued its decision denying Mr. Kiro's request for review and upholding the ALJ's final decision.  Tr. 1-4.  On January 29, 2018, Mr. Kiro timely filed a Complaint seeking judicial review of the Commissioner's final decision. Doc. 1.

---

[2] Mr. Kiro initially alleged an onset date of November 1, 1999, but requested it be amended to September 29, 2006. Tr. 42.

[3] Citations to "Tr." are to the Transcript of the Administrative Record (Doc. 12) that was lodged with the Court on April 18, 2018.

## II.  Applicable Law

### A.    Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals).  The Social Security Commissioner has adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

> (1)    At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[4]  If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.

> (2)    At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s).  If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, he is not disabled.

> (3)    At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement.  If so, a claimant is presumed disabled.

> (4)    If, however, the claimant's impairments do not meet or equal in severity one of the listing described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work."  Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's

---

[4] Substantial work activity is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  Work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before. *Id.*  Gainful work activity is work activity that you do for pay or profit.  20 C.F.R. §§ 404.1572(b), 416.972(b).

residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5)     If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n. 5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

**B.     Standard of Review**

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias,* 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d

1270, 1272 (10th Cir. 2008).  A decision is based on substantial evidence where it is supported

by "relevant evidence . . . a reasonable mind might accept as adequate to support a conclusion."

*Langley*, 373 F.3d at 1118.  A decision "is not based on substantial evidence if it is overwhelmed

by other evidence in the record[,]"  *Langley,* 373 F.3d at 1118, or "constitutes mere conclusion."

*Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992).  The agency decision must "provide

this court with a sufficient basis to determine that appropriate legal principles have been

followed."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).  Therefore, although an

ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the

ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not

disabled" must be "articulated with sufficient particularity."  *Clifton v. Chater*, 79 F.3d 1007,

1009-10 (10th Cir. 1996).

## III. Analysis

The ALJ determined that Mr. Kiro was not disabled from his alleged onset date through

his date last insured.  Tr. 19-33.  In making this determination, the ALJ found at step one that

Mr. Kiro met the insured status requirements through September 30, 2006, and that he had not

engaged in substantial gainful activity since his alleged onset date.  Tr.  24.  At step two, the ALJ

found that through the date last insured, Mr. Kiro had severe impairments of degenerative disc

disease, status-post lumbar fusion, shoulder pain, and bilateral knee pain.[5]  *Id.*  The ALJ,

however, determined that Mr. Kiro's impairments did not meet or equal in severity one of the

listings described in Appendix 1 of the regulations.  Tr. 25.  As a result, the ALJ proceeded to

step four and found that after careful consideration of the entire record, Mr. Kiro had the residual

---

[5] The ALJ considered Mr. Kiro's alleged memory loss and determined that the record lacked a diagnosis for memory problems and that it, therefore, was not a medically determinable impairment.  Tr. 24.

functional capacity through the date last insured to perform light work as defined in 20 CFR

404.1567(b). Tr. 25. The ALJ stated that Mr. Kiro

> could lift/carry twenty pounds occasionally and ten pounds frequently; sit six of
> eight hours; stand six of eight hours; and walk six of eight hours. He could push
> and pull twenty pounds occasionally and ten pounds frequently. The claimant
> could frequently reach to the left and right; and frequently handle items with the
> left hand and right hand. He could frequently climb ramps and stairs, balance and
> stoop. The claimant could occasionally climb ladders, ropes, or scaffolds, and
> kneel. The claimant's time off task could be accommodated by normal breaks.

Tr. 28. The ALJ concluded at step four that Mr. Kiro was not able to perform any past relevant

work. Tr. 30. At step five, the ALJ determined that based on Mr. Kiro's age, education, work

experience, RFC, and the testimony of the VE, there were jobs that existed in significant

numbers in the national economy that Mr. Kiro could have performed through his date last

insured and was, therefore, not disabled. Tr. 31-33.

Mr. Kiro asserts two arguments in support of his Motion as follows: (1) the Appeals

Council failed to properly consider the opinion of Dr. John Vigil, M.D.; and (2) ALJ Pardo failed

to apply the correct legal standards when evaluating the opinion of treating physician Dr. Phillip

Sandoval. Doc. 16 at 9-20. For the reasons discussed below, the Court finds no reversible error.

### A.    <u>Consideration of Additional Evidence</u>

On September 18, 2017, John R. Vigil, M.D., CIME, performed an independent medical

and functional evaluation of Mr. Kiro based on a referral from Attorney Scott Rode. Tr. 10-15.

Mr. Kiro reported that his primary disabling complaint was chronic back pain. Tr. 10. Dr. Vigil

indicated he reviewed Mr. Kiro's medical records[6] and took Mr. Kiro's relevant histories; *i.e.,*

---

[6] Dr. Vigil reviewed medical records from University of New Mexico Hospital, New Mexico Orthopedics,
Albuquerque Health Partners, and Acoma-Canoncito-Laguna Health Service. (Tr. 10.)

history of present illness,[7] past medical history, past surgical history, family medical history, and social/occupational history. Tr. 10-12. On physical exam, Dr. Vigil noted, *inter alia*, that Mr. Kiro appeared to be in obvious discomfort, had a slow and antalgic gait, was unable to stay up on his toes or heels, was unable to squat or hop, was able to get up on the exam table on his own slowly and with some difficulty, was able to move from the supine to the prone position on the examination table with moderate pain and some difficulty, had a positive straight leg lift on the right in both the supine and sitting positions, had moderate lumbar tenderness on palpation, had decreased range of motion of the lumbar spine, had some bilateral paraspinous muscle tenderness and spasm, and that any movement was associated with increased pain as evidenced by wincing. Tr. 14. Dr. Vigil assessed (1) chronic low back pain with radiculitis; (2) status post lumbar fusion, failed back syndrome; (3) degenerative disc disease of the lumbar spine with spondylosis and facet arthropathy; and (4) status post traumatic brain injury. *Id.* Dr. Vigil concluded that

> . . . it is my opinion that within a reasonable medical probability that this patient has severe functional limitations and is severely limited in both vocational and avocational activities secondary to his chronic pain syndrome.

---

[7] Mr. Kiro reported that he had been in a motor vehicle accident in 1999 when he was hit by an oncoming train, after which he was in a coma and then rehab therapy for several months. Tr. 11. Mr. Kiro underwent a lumbar fusion in 2003 for continued post-accident lower back pain. *Id.* Mr. Kiro reported that he tried to go back to work after rehabilitation, but could not keep a job because of his pain. *Id.* He reported that he finally quit working in 2006 or 2007 because he could no longer tolerate the pain. *Id.* Dr. Vigil noted that

> [t]oday, Mr. Kiro complains of chronic daily and constant pain in the low back that radiates into both legs and buttocks. He rates the pain at average at 8 to 9/10 in intensity and states the lowest it has been is 8/10 in the last month and the highest it has been 10/10 in the last month. . . . He states the pain is sharp, stabbing, and achy and is associated with numbness and tingling all the way down to the top of his feet. He states he has pins and needles sensation in his toes, right greater than left. He states that he has weakness in his legs and sometimes has to use a cane. He states physical activity, including bending lifting, twisting, walking, prolonged standing, and prolonged sitting all aggravate the pain. . . . He states he can lift no more than 10 pounds. He states he can walk for no more than ½ hour, stand for no more than one half hour, and sit for no more than 20 to 30 minutes at a time. He is able to do all personal care but occasionally needs help putting on socks and shoes. He does minimal yardwork or housework. . . . .

Tr. 11-12.

> It is my opinion that Mr. Kiro's disabilities, including his chronic pain preclude
> him performing even sedentary work on a full-time and sustained basis from at
> least 2007 more likely from 2004 when he had his lumbar fusion.
> . . .

Tr. 14.

Dr. Vigil also completed a *Medical Assessment of Ability To Do Work-Related Activities (Physical)* and a *Medical Assessment of Ability To Do Work-Related Activities (Non-Physical)* on Mr. Kiro's behalf. Tr. 16-18. The instructions directed Dr. Vigil to consider Mr. Kiro's "medical history and the chronicity of findings as from 2006 to current examination." Tr. 11-12. In doing so, Dr. Vigil assessed that Mr. Kiro could never lift/carry up to 10 pounds; could sit, stand or walk for less than 30 minutes; could frequently reach, handle and finger; could occasionally use his feet; and could never climb, balance, stoop, kneel or crouch. Tr. 16-17. Dr. Vigil further assessed that Mr. Kiro suffered from a severe pain producing impairment, injury or sickness that caused sleep disturbances and fatigue, and required Mr. Kiro to rest or lie down at regular intervals. Tr. 18. Finally, Dr. Vigil assessed that Mr. Kora had *moderate* limitations in his ability to (1) maintain attention and concentration for extended periods (*i.e.,* 2-hour segments); and (2) maintain regular attendance and be punctual within customary tolerance; and had *marked* limitations in his ability to (1) perform activities within a schedule; (2) maintain physical effort for long periods without a need to decrease activity or pace, or to rest intermittently; and (3) complete a normal workday and workweek without interruptions from pain or fatigue based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods. *Id.* Dr. Vigil explained that Mr. Kiro had severe chronic back pain due to degenerative disc disease, spondylosis, and failed back syndrome. *Id.*

Mr. Kiro argues that the Appeals Council improperly determined that the additional submitted evidence would not show a reasonable probability that it would change the outcome of the decision. Doc. 16 at 9-14. Mr. Kiro further argues that the additional evidence is new, material, and chronologically pertinent and, therefore, should have been considered. *Id.* The Commissioner contends that the Appeals Council's denial of claimant's request for review is not judicially reviewable because the Appeals Council considered the evidence and determined that it did not provide a basis for changing the ALJ's decision. Doc. 18 at 13. The Commissioner further contends that, should the Court consider the additional evidence in its substantial evidence review, Mr. Kiro has failed to comply with the requirements of 20 C.F.R. § 404.970(a)-(b).[8]

As an initial matter, the Commissioner misstates the proper legal standard. Here, the Appeals Council explicitly stated it did *not* accept and consider the new evidence; *i.e.,* "[w]e did not consider and exhibit this evidence." Tr. 2. Additionally, it did not indicate that the additional evidence was made part of the record. Tr. 5. In other words, the Appeals Council's dismissal of the additional evidence's import on the grounds that it did not show a reasonable probability that it would change the outcome of the decision indicates that it ultimately found the evidence did not qualify for consideration at all. *Padilla v. Colvin*, 525 F. App'x 710, 712 (10th

---

[8] This regulation changed effective January 17, 2017, with compliance not required until May 1, 2017. *See* 81 FR 90987-01, 2016 WL 7242991 (F.R.) (Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process). The changed regulation added, *inter alia,* the requirement that additional evidence should be considered if "there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5). The changed regulation also added that the Appeals Council will only consider additional evidence "if you show good cause for not informing us about or submitting the evidence as described in § 404.935[(Submitting written evidence to an administrative law judge).]" *Id.* The regulation further instructs that "[i]f you submit additional evidence that does not relate to the period on or before the date of the administrative law judge hearing decision as required in paragraph (a)(5) of this section or the Appeals Council does not find you had good cause for missing the deadline to submit the evidence in § 404.935, the Appeals Council will send you a notice that explains why it did not accept the additional evidence and advises you of your right to file a new application." 20 C.F.R. § 404.970(c).

Cir. 2013). As such, if the Appeals Council should have considered the additional evidence but failed to do so, it would be improper for this Court to perform a substantial evidence review of the ALJ's decision by evaluating new evidence that was not considered below. *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004)). Thus, the initial question before the Court is whether the Appeals Council should have considered the additional evidence.

Whether evidence qualifies for consideration by the Appeals Council is a question of law subject to our *de novo* review. *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011) (citing *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003)). "[O]ur general rule of *de novo* review permits us to resolve the matter and remand if the Appeals Council erroneously rejected the evidence." *Krauser*, 638 F.3d at 1328 (citing *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004)).

Additional evidence should be considered only if it is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision. 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5). Evidence is new "if it is not duplicative or cumulative" and material "if there is a reasonable possibility that it would have changed the outcome." *Threet,* 353 F.3d at 1191. Evidence is chronologically pertinent if it relates to the time period adjudicated by the ALJ; *i.e.,* the period on or before the date of the ALJ's decision. *Chambers*, 389 F.3d at 1142.

> If the evidence does not qualify, it plays no further role in judicial review of the Commissioner's decision. If the evidence does qualify and the Appeals Council considered it "in connection with the claimant's request for administrative review (regardless of whether review was ultimately denied), it becomes part of the record we assess in evaluating the Commissioner's denial of benefits under the substantial-evidence standard." Finally, if the evidence qualifies but the Appeals Council did not consider it, the case should be remanded for further proceedings.

*Chambers*, 389 F.3d at 1142 (quoting *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994)).

Here, the Appeals Council explained that it did not consider the additional evidence because there was not a reasonably probability that it would change the outcome of the decision. The Court, however, addresses all of the criteria as part of its *de novo* review.

### 1.    The Additional Evidence Is New

The additional evidence is new because it is not duplicative or cumulative. Dr. Vigil's independent medical evaluation and functional were not available to the ALJ at the time he made his decision. As such, the evidence is not duplicative. Additionally, Dr. Vigil's opinion is more restrictive than the other medical source opinion evidence in the record. As such, the evidence is not cumulative.

### 2.    The Additional Evidence Is Chronologically Pertinent

The additional evidence, on its face, relates to the period at issue. Dr. Vigil completed the independent medical evaluation and functional assessments on January 18, 2017. Tr. 10-15. However, the instructions directed him to consider Mr. Kiro's "medical history and the chronicity of findings as from 2006 to current examination."[9] *Id.; see* HALLEX I-3-3-6(B) (noting that there are circumstances when evidence dated after the ALJ decision relates to the period at issue, such as when a statement makes a direct reference to the time period adjudicated). Therefore, on its face, it relates to the period at issue.

---

[9] Mr. Kiro's amended alleged onset date is September 29, 2006, and his date of last insured is September 30, 2006.

### 3. The Additional Evidence Is Not Material and Does Not Show A Reasonable Probability That It Would Change the Outcome of the Case

Mr. Kiro argues that the evidence is material because it raises a question as to whether the ALJ's RFC and decision were supported by substantial evidence. Doc. 16 at 12-14. The Commissioner contends that the evidence does not undermine the ALJ's RFC because the ALJ's RFC considered the evidence of record and properly discounted a less restrictive assessment prepared by Mr. Kiro's treating physician. Doc. 18 at 15-16. As such, the Commissioner asserts that Dr. Vigil's more restrictive assessment is not material.

The Court finds the evidence is not material because it does not show a reasonable possibility or probability that it would change the outcome of the decision. Here, while the onset of Mr. Kiro's chronic back pain is traceable to the relevant period of time, there is no objective evidence in the record to support that Mr. Kiro experienced a disabling impairment during the relevant period of time. *See Flint v. Sullivan*, 951 F.2d 264, 268 (10th Cir. 1991) (while the onset of an impairment may be traceable to the relevant period of time, there must be evidence to suggest that the claimant experienced disabling effects of his impairment during the relevant period). As such, Dr. Vigil's postdated assessment is insufficient to demonstrate otherwise and does not bear on the severity of Mr. Kiro's alleged impairments during the relevant period. For this reason, Dr. Vigil's assessment is not material.

Because the Court finds the evidence does not qualify, it plays no further role in the Court's review of the ALJ's decision. *Chambers*, 389 F.3d at 1142.

**B.** **The ALJ Applied the Correct Legal Standard in Weighing
Dr. Sandoval's Opinion and His Findings Are Supported By
Substantial Evidence**

The medical record evidence demonstrates that Mr. Kiro first saw treating physician

Phillip Sandoval, M.D.,[10] of Acoma-Canoncito-Laguna Adult Medicine, on August 6, 2007,

approximately one year after his date of last insured. Tr. 505. Mr. Kiro reported that he was

considering applying for a job, but was concerned about re-injuring his back. *Id.* Dr. Sandoval

assessed Mr. Kiro's functional limitations at that time as follows: "Able to lift 30 lbs. w/o

exacerbating the back pain, but this would be only a couple of times of day. Able to stand about

1 hour before has to sit down. Able to sit approximately 45 minutes before he has to stand. Able

to bend and able to be on his knees." *Id.*

Mr. Kiro next saw Dr. Sandoval approximately three years later on July 23, 2010. Tr.

366. Mr. Kiro presented to Dr. Sandoval because he had been "climbing to roof" and sustained a

laceration to his right calf.[11] *Id.* Mr. Kiro also complained of low back pain and stated it was

very difficult taking care of his elderly parents. *Id.* Dr. Sandoval assessed chronic low back

pain, laceration to the right calf, and probable depression. *Id.* He prescribed Zoloft and referred

Mr. Kiro to orthopedics.[12] *Id.*

Mr. Kiro presented next to Dr. Sandoval two years later on July 9, 2012. Tr. 391. He

complained of low back pain. Tr. 391. Dr. Sandoval noted on physical exam that Mr. Kiro was

not ill appearing and ambulated without difficulty. *Id.* Dr. Sandoval assessed, *inter alia*, lumbar

---

[10] On August 6, 2007, the record indicates Mr. Kiro saw provider "Sandoval. Tr. 505.

[11] On July 22, 2010, Mr. Kiro presented to the Acoma-Canoncito-Laguna Emergency Room and reported he was climbing over a fence, fell, and cut his calf on a rock. Tr. 364.

[12] There is no evidence in the Administrative Record that Mr. Kiro followed up with the orthopedics referral at this time.

spine disk disease and chronic low back. *Id.* Dr. Sandoval again referred Mr. Kiro to orthopedics. *Id.*

Mr. Kiro saw Dr. Sandoval three times in 2013. On April 2, 2013, Mr. Kiro presented with nasal congestion and reported his "usual low back pain." Tr. 419. On April 23, 2013, Dr. Sandoval noted that Mr. Kiro was approved for orthopedic evaluation.[13] Tr. 423. On October 7, 2013, Mr. Kiro presented with "usual back pain." Tr. 434. On physical exam, Dr. Sandoval noted that Mr. Kiro was not able to squat without causing low back pain. *Id.* Dr. Sandoval also noted that Mr. Kiro was talking about joining a local health club and that taking his analgesic helped to control the pain during the day and allowed him to perform at least some of the routine activities at home. *Id.*

Dr. Sandoval routinely signed off on Mr. Kiro's requested medication refills from October 5, 2010, through January 12, 2012. Tr. 369-88.

On July 11, 2017, approximately four years after the date Dr. Sandoval last saw Mr. Kiro, and eleven years after Mr. Kiro's date of last insured, Dr. Sandoval prepared a *Medical Assessment of Ability To Do Work-Related Physical Activities (Physical)* and *Medical Assessment of Ability To Do Work-Related Physical Activities (Non-Physical)* on Mr. Kiro's behalf. Tr. 625-27. The instructions directed Dr. Sandoval to "consider patient's medical history and the chronicity of findings prior to September 2006 to December 31, 2010." *Id.* Dr. Sandoval assessed that Mr. Kiro could never lift/carry up to 10 lbs., but could occasionally

---

[13] On April 26, 2013, Mr. Kiro saw Evan R. Knaus, D.O., of New Mexico Orthopaedics. Tr. 480-82. Mr. Kiro reported that he has been experiencing lower back pain since his motor vehicle accident which had been progressive over the last few years. *Id.* He further reported that his symptoms had recently worsened due to a slip and near fall in the bathtub approximately one month earlier. *Id.* Mr. Kiro reported feeling better with physical therapy and home exercises and having no difficulties with his activities of daily living. *Id.* He also reported that he felt severely impaired functionally, that his pain was continuous, and that his symptoms were worse when lifting. *Id.* Dr. Knaus recommended he continue with his current medication and provided a referral for physical therapy. Tr. 482.

lift/carry up to 50 lbs.  Tr. 625.  He explained that Mr. Kiro had increased back pain from lifting.

*Id.*  He assessed that Mr. Kiro could sit for 45 minutes, stand for 30 minutes, and walk for 55

minutes.  *Id.*  He assessed that Mr. Kiro did not require the use of an assistive device to

ambulate, for balance, and/or to reduce pain.  *Id.*  Dr. Sandoval explained that his medical and

clinical findings were "due to back pain; subjective information."  *Id.*  Dr. Sandoval further

assessed that Mr. Kiro could occasionally reach and push/pull, could frequently handle/finger.

Tr. 625-26.  Finally, he assessed that Mr. Kiro could never climb stairs, but could occasionally

balance, stoop, kneel and crouch.  Tr. 626.  Dr. Sandoval indicated that it was unknown whether

Mr. Kiro's limitations would last for 12 consecutive month and that "at last contact – patient was

to be referred to orthopedics."  *Id.*

 As for Mr. Kiro's non-physical limitations, Dr. Sandoval indicated that Mr. Kiro suffered

from a severe pain producing impairment, injury or sickness that caused sleep disturbances and

fatigue, and required him to rest or lie down at regular intervals.  Tr. 627.  Dr. Sandoval assessed

that Mr. Sandoval had *moderate* limitations in his ability to perform activities within a schedule

and to maintain physical effort for long periods without a need to decrease activity or pace, or to

rest intermittently.  *Id.*  He further assessed that Mr. Kiro had a *marked* limitation in his ability to

complete a normal workday and workweek without interruptions from pain or fatigue based

symptoms and to perform at a consistent pace without unreasonable number and length of rest

periods.  *Id.*

 The ALJ accorded Dr. Sandoval's assessments some weight.  He explained that

> the totality of the evidence supports the ability to perform light exertion,
> consistent with the residual functional capacity, above, for the period prior to
> September 30, 2006.  No medically determinable impairment reflects off task or
> pain behavior to preclude working.  Notably, Dr. Sandoval stated that medical and
> clinical findings pertaining to the claimant's back pain were based in part on
> subjective information.  Moreover, the assessments appear[] retrospective to

15

September 30, 2006, given that there is no evidence that Dr .Sandoval treated the claimant prior to the date last insured. . . . While the claimant has some limitations secondary to physical impairments, the evidence does not substantiate any no work-precluding limitations.

Tr. 30.

Mr. Kiro argues that the ALJ failed to provide clear reasons for rejecting Dr. Phillip Sandoval's opinion. Doc. 16 at 14-20. Specifically, Mr. Kiro argues that the ALJ failed to point to specific evidence to support his finding that Mr. Kiro could perform light work before his date of last insured.[14] *Id.* at 17. He further argues that the ALJ summarily dismissed Mr. Kiro's subjective reports of pain. *Id.* at 18. Mr. Kiro also argues that whether Dr. Sandoval's opinion is retrospective is irrelevant because Dr. Sandoval was in a "much better position than a non-examining consultant who never sees a patient . . . to give a retrospective opinion." *Id.* Finally, Mr. Kiro argues that the ALJ failed to properly consider all of the six *Watkins* "deference" factors in his determination. *Id.* at 19.

The Commissioner contends that the ALJ's reasons for discounting Dr. Sandoval's opinion evidence were valid and supported by substantial evidence. Doc. 18 at 8-13. In particular, the Commissioner contends that the ALJ properly discounted Dr. Sandoval's opinion because (1) it was inconsistent with the record evidence; (2) it was based, at least in part, on Mr. Kiro's subjective complaints; and (3) there was a lack of treatment during the relevant period of time. *Id.*

---

[14] As part of his argument that the ALJ failed to properly weigh Dr. Sandoval's assessments, Mr. Kiro broadly alleges, without more, that the ALJ failed to specifically state the evidence upon which his RFC is based. Doc. 16 at 17. To the extent Mr. Kiro is raising an argument that the ALJ's RFC is not supported by substantial evidence, this argument is unspecific, undeveloped, and unsupported. As such, it is waived. *See Tietjen v. Colvin*, 527 F. App'x 705, 709 (10th Cir. 2013) (finding that arguments raised in a perfunctory manner are waived) (citing *United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002)).

It is undisputed that Dr. Sandoval is a treating physician. Therefore, the ALJ was required to evaluate his opinions pursuant to the two-part treating physician inquiry. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). First, the ALJ must determine whether the treating physician's opinions are entitled to controlling weight. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Here, the ALJ only accorded Dr. Sandoval's assessments some weight, and so clearly did not give them controlling weight. *See Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014) (finding no reversible error when the Court can tell from the decision that the ALJ declined to give controlling weight to a treating physician opinion).

Second, if the treating physician's opinions are inconsistent with the record or not supported by medical evidence, the opinions do not merit controlling weight but still must be weighed using the following six factors:

> (1) the length of the treatment relationship and the frequency of examination;
> (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (internal citations and quotations omitted); *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c). Not every factor is applicable in every case, nor should all six factors be seen as absolutely necessary. What is necessary, however, is that the ALJ give good reasons—reasons that are "sufficiently specific to [be] clear to any subsequent reviewers"—for the weight that she ultimately assigns to the opinions. *Langley*, 373 F.3d at 1119; *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Branum v. Barnhart*, 385 F.3d 1268, 1275 (10th Cir. 2004).

Here, while the ALJ did not go through each of the above factors, he provided legitimate reasons that are supported by substantial evidence for rejecting Dr. Sandoval's assessments. First, the ALJ determined that Dr. Sandoval's assessments were inconsistent with the "totality of the evidence" that supported an ability to perform light exertional work. Tr. 30. Although the ALJ did not directly cite to specific medical record evidence in the particular paragraph of his determination wherein he discussed Dr. Sandoval's opinion, elsewhere in his determination he discussed the medical record evidence prior to, and after, Mr. Kiro's date of last insured. Tr. 26-29. For example, the ALJ noted that the evidence prior to Mr. Kiro's date of last insured was sparse. Tr. 26. The ALJ discussed the history of Mr. Kiro's car accident, his subsequent lumbar fusion surgery and uncomplicated postoperative course, his physical therapy progress notes which reflected his potential for rehabilitation was "good," and his physical exams that demonstrated good reflexes and ambulating without any assistive device. Tr. 26-28. The record supports the ALJ's findings.[15]

---

[15] On November 21, 2002, and January 1, 2003, Mr. Kiro presented to Jose R. Reyna, M.D., of the University of New Mexico Department of Orthopaedics with a chief complaint of "L5-S1 spondylolisthesis, grade II, and L4-L5 degenerative disk disease." Tr. 318-19, 321-22. On March 4, 2003, Dr. Reyna performed a "L4, L5, vertebral body fusion, lateral arthrodesis, L5, S1, posterior lateral arthrodesis, pedicle screws to L4 and L5 and S1. Laminectomy of L4 and a left iliac crest bone grafting" on Mr. Kiro. Tr. 309, 323-24. Dr. Reyna noted no complications. Tr. 323. Discharge records noted that Mr. Kiro was seen by physical therapy "who felt that he was doing very well and ambulating," and that his pain was well controlled. *Id.* He was cleared for discharge on March 8, 2003. *Id.*

On August 22, 2003, five months post-surgery, Mr. Kiro reported to George Brown, M.D., that he needed documentation to return to work and that he hoped to return to work within six to twelve months from the time of surgery. Tr. 317. He reported that he was taking Percocet. *Id.* He also reported that he was trying to jog, but was still in the walking phase, which Dr. Brown noted was "appropriate at this stage after surgery." *Id.* On physical exam, Dr. Brown noted "[h]is exam was good," forward bend is to six inches from the floor, and he could walk on his heels and toes. *Id.*

Two years later, on September 15, 2005, Mr. Kiro had radiologic studies at Acoma-Canoncito-Laguna Hospital for "lumbar pain, fell off ladder." Tr. 451. The x-rays indicated that Mr. Kiro's previous lower back surgery was stable and unchanged, and that there were "[s]ubtle findings suggesting early disc degenerative disease at L3-4, but this has not significantly changed since the previous study." *Id.*

On October 28, 2005, Mr. Kiro underwent a physical therapy clinical evaluation at Acoma-Canoncito-Laguna Hospital for chronic low back pain and paraspinal/core muscle weakness. Tr. 353. Mr. Kiro reported he had not been working for four weeks due to lumbar back pain. *Id.* He reported increased pain in the evening and

When the ALJ referred to objective medical evidence in the record, the ALJ did so accurately. The RFC the ALJ assessed is consistent with objective medical evidence in existence prior to Mr. Kiro's date of last insured and to which the ALJ referenced in his opinion. Further, with regard to medical evidence in existence prior to Mr. Kiro's date of last insured to which the ALJ did not refer in his opinion, Mr. Kiro points to no objective medical evidence inconsistent with the ALJ's RFC. Nor can the Court find any such inconsistencies. Thus, objective evidence in existence prior to the date of last insured does not indicate that Mr. Kiro's restrictions should be greater than those the ALJ assessed.[16]

As for the medical record evidence created after Mr. Kiro's date of last insured, the ALJ justifiably determined that Mr. Kiro's condition after his date of last insured does not reflect the state of his condition during the relevant time period. For instance, the ALJ noted that Mr. Kiro reported his condition worsened in 2013 after a slip and fall in the bathtub, that medical providers continued to recommend conservative care with medication and physical therapy, that new imaging studies in 2014 demonstrated no urgent or emergent findings, and that on physical exams Mr. Kiro consistently had a non-antalgic gait and ambulated without an assistive device. Tr. 27-28. The record supports these findings. Tr. 391, 419, 423, 445-46, 476-78, 480. As such, the Court finds that the ALJ's assessed limitations are consistent with the record and substantial

---

that stretching and medication helped his pain. *Id.* Mr. Kiro reported he had no problems with his activities of daily living, but was unable to lift greater than 50 pounds at work. *Id.* The evaluator noted "[no] restrictions per ortho MD." *Id.* The evaluator assessed Mr. Kiro with lumbar back pain due to "core muscle instability and lack of exercise (overweight)," and some pain with spinal fusion. *Id.* Mr. Kiro did not show up for his follow-up physical therapy appointments and was discharged. Tr. 354, 355.

[16] Mr. Kiro argues that the fact of his accident alone and subsequent related care demonstrates an inability to perform at the light exertional level. Doc. 16 at 17-18. However, RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, may cause physical or mental limitations or restrictions that may affect his capacity to do work-related physical and medical activities. 20 C.F.R. §§ 404.1545; SSR 96-8p, 1996 WL 374184, at *2. Here, the ALJ found Mr. Kiro had certain severe impairments related to his accident and subsequent surgery, but nonetheless determined that he maintained the RFC for light exertional work. Mr. Kiro has not disputed the ALJ's RFC assessment. *See* fn. 14, *supra.*

evidence supports the ALJ's conclusion that Dr. Sandoval's opinion should be discounted because his assessments are inconsistent with the totality of the evidence. *See* 20 C.F.R. 404.1527(c)(4) (explaining that the more consistent a medical opinion is with the record as a whole, the more weight will be given to that medical opinion).

The ALJ also discounted Dr. Sandoval's assessment because they were based, at least in part, on Mr. Kiro's subjective complaints. This is a valid reason for rejecting a medical source opinion where, as here, the treating physician specifically noted that his assessment was based on "subjective information."[17] *See* 20 C.F.R. 404.1527(c)(3) (explaining that the more a medical source presents relevant evidence to support a medical opinion, particularly medicals signs and laboratory findings, the more weight will be given the that opinion).

Additionally, the ALJ did not summarily dismiss out of hand Mr. Kiro's complaints of pain. To the contrary, the ALJ carefully considered the evidence and determined that Mr. Kiro had medically determinable impairments that could produce his symptoms of pain. Tr. 28. The ALJ also determined, however, that Mr. Kiro's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with medical evidence and other evidence in the record. Tr. 28. *See* SSR 16-3p, 2016 WL 1119029, at *6 (a claimant's statements about the intensity, persistence, and limiting effects of symptoms are evaluated based

---

[17] Mr. Kiro cites *Langley v. Barnhart*, 383 F.3d 1116, 1121 (10th Cir. 2014) for the proposition that the ALJ must have a legal or evidentiary basis for finding that a treating physician's opinions were based merely on a claimant's subjective complaints. Doc. 16 at 18. The Tenth Circuit in *Langley*, however, specifically noted that nothing in the treating physician's reports indicated that he relied on a claimant's subjective complaints or that his report was merely an act of courtesy. 383 F.3d at 1121. As such, it was improper for the ALJ to discount the treating physician's opinion on that basis. *Id.* Here, that is not the case because Dr. Sandoval explicitly indicated that his assessment was based, in part, on Mr. Kiro's subjective reports. Tr. 625. Mr. Kiro also cites *Garcia v. Barnhart*, 188 F. App'x 760, 763-64 (10th Cir. 2006) for the same proposition. In that case, the Court found the ALJ improperly discounted a medical source opinion for relying excessively on the claimant's subjective complaints because the ALJ ignored treatment notes and objective radiologic studies that supported the treating physician's assessment. *Id.* That is not the case here.

on their consistency with objective medical evidence and other evidence). Mr. Kiro has raised

no objection to the ALJ's evaluation of his statements regarding the intensity, persistence, and

limiting effects of his symptoms. As such, the Court finds that the ALJ's explanation that he

discounted Dr. Sandoval's assessments because they were based in part on Mr. Kiro's subjective

reports is supported by substantial evidence and appropriately is among the reasons to discount

Dr. Sandoval's opinion.

Finally, the ALJ noted that Dr. Sandoval's assessments were retrospective and there was

no evidence that Dr. Sandoval treated Mr. Kiro prior to his date of last insured.[18] Tr. 30. The

record supports these findings. In the face of a retrospective assessment, "the relevant analysis is

whether the claimant was actually disabled prior to the expiration of [his] insured status . . . . A

retrospective diagnosis without evidence of actual disability is insufficient. This is especially

true where the disease is progressive." *Potter v. Secretary of Health & Human Services*, 905

F.2d 1346, 1348-49 (10th Cir. 1990). As such, there must be evidence of actual disability prior to

Mr. Kiro's last date of insured.

> [E]vidence bearing upon an applicant's condition subsequent to the date upon
> which the earning requirement was last met is pertinent evidence in that it may
> disclose the severity and continuity of impairments existing before the earning
> requirement date or may identify additional impairments which could reasonably
> be presumed to have been present and to have imposed limitations as of the
> earning requirement date.

*Baca v. Dep't of Health & Human Servs.,* 5 F.3d 476, 479 (10th Cir.1993) (remanding in part

because ALJ ignored evidence from before and after plaintiff's date last insured in finding there

was no probative medical evidence documenting disability during the relevant time period)

---

[18] *See* 20 C.F.R. 404.1527(c)(2)(i) (explaining that the more times you have been seen by that treating source, that more weight will be given to that opinion). Here, the ALJ correctly found that Dr. Sandoval did not treat Mr. Kiro during the relevant period of time.

(quoting *Gold v. Sec'y of Health, Educ. & Welfare,* 463 F.2d 38, 42 (2d Cir.1972)). The key is that the subsequent evidence must bear upon the severity of the Mr. Kiro's impairments during the period between the onset date and the date last insured. This nexus is established by evidence from which it could reasonably be presumed that the limitations existed prior to the expiration of the insured status. *Baca*, 5 F.3d at 479. When there is no evidence in the record suggesting that a claimant has experienced a disabling impairment during the insured period, subsequent evidence, including a physician's retrospective diagnosis, is insufficient. *Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995)); *see also Flint*, 951 F.2d at 268.

Here, the ALJ found that the medical record during the relevant period of time established that Mr. Kiro had severe physical impairments. However, Mr. Kiro's burden was to demonstrate that, before his date last insured, his impairments were sufficiently severe to prevent him from "engag[ing] in any substantial gainful activity ... for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Mr. Kiro did not meet his burden because the ALJ also found there was no objective evidence in the record suggesting that Mr. Kiro experienced a disabling impairment during the relevant period of time. Dr. Sandoval's postdated assessment, therefore, is insufficient to demonstrate otherwise and does not bear on the severity of Mr. Kiro's alleged impairments during the relevant period. Further, other medical records dated after, but in close proximity to, Mr. Kiro's date of last insured demonstrate that Mr. Kiro's could do work-related activities consistent with the ALJ's RFC.[19] Later records also demonstrate that Mr. Kiro reported that his pain was progressive, which lends even greater support to the lack of

___

[19] On August 6, 2007, approximately one year after Mr. Kiro's date of last insured, he presented to Acoma-Canoncito-Laguna Adult Medicine and complained of persistent low back pain. Tr. 505. He reported that he was considering applying for a job, but was concerned about re-injuring his back. *Id.* Dr. Sandoval assessed Mr. Kiro's functional limitations at that time as follows: "Able to lift 30 lbs. w/o exacerbating the back pain, but this would be only a couple of times of day. Able to stand about 1 hour before has to sit down. Able to sit approximately 45 minutes before he has to stand. Able to bend and able to be on his knees." *Id.*

evidence of actual disability prior to the date of last insured.[20]  *Potter*, 905 F.2d at 1348-49.  In summary, while the onset of Mr. Kiro's chronic back pain is traceable to the relevant period of time, there is no evidence to suggest that he experienced disabling effects of his impairments prior to his date of last insured.  *Flint,* 951 F.2d at 268.  The ALJ's explanation for discounting Dr. Sandoval's assessments as retrospective is therefore legitimate and supported by substantial evidence.

For all of the foregoing reasons, the ALJ provided good reasons that are supported by substantial evidence and that were sufficiently specific to be clear to any subsequent reviewers for the weight that he ultimately assigned to Dr. Sandoval's assessments. *Langley*, 373 F.3d at 1119.  As such, there is no reversible error as to this issue.

### IV.  Conclusion

For the reasons stated above, Mr. Kiro's Motion to Reverse and Remand for Rehearing With Supporting Memorandum (Doc. 16) is **DENIED.**

**STEVEN C. YARBROUGH**
**United States Magistrate Judge,**
**Presiding by Consent**

---

[20] Mr. Kiro reported to medical providers on April 26, 2013, seven years after his date of last insured, that his lower back pain had been "progressive over the last few years" and had recently worsened after a slip and fall in the bathtub.  Tr. 480.  On September 22, 2014, eight years after his date of last insured, Mr. Kiro reported his "symptoms had worsened."  Tr. 476.  On December 22, 2016, ten years after his date of last insured, Mr. Kiro reported that his pain started in approximately 2000 and had progressively worsened ever since.  Tr. 558.